UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

HERBERT HOLMES,
     Plaintiff,

     v.                        C.A. No. 12-931

STEVEN CONSTANTINO, in his
official capacity as Secretary of
R.I. Executive Office of Health &
Human Services and SANDRA POWELL,
in her official capacity a Director
of the R.I. Department of Human
Services,
     Defendants.

## OPINION AND ORDER

This matter is before the Court on the Motion of Defendants

to dismiss Plaintiff's complaint through entry of judgment on the

pleadings, pursuant to Fed. R. Civ. P. Rule 12(c).  Plaintiff

Herbert Holmes seeks this Court's review of Defendants'

interpretation and application of federal regulation 20 C.F.R. §

416.930; the misinterpretation of which, Plaintiff alleges,

resulted in Defendants' denial of his application for medical

assistance benefits.  Defendants argue that this Court must

refrain from interfering in the State's administration of medical

assistance benefits, and must decline to hear this matter based

on the doctrine of abstention set forth in <u>Burford v. Sun Oil Co.</u>, 319 U.S. 315 (1943).  Although the Court rejects Defendants' argument that abstention is appropriate in this matter, the Court grants Defendants' motion to dismiss because, as explained below, Plaintiff lacks the requisite standing to pursue his claims here.

## **Background**

Plaintiff was born in 1965 and spent fifteen years as a furniture mover.  He is currently unemployed and indigent.  In addition, Plaintiff is plagued by various physical and emotional problems, including, *inter alia:* arthritis, diabetes, hypertension, neuropathy, depression and anxiety.

In January 2010, Plaintiff applied to the State of Rhode Island for medical assistance benefits.  Rhode Island Medical Assistance ("Medical Assistance") is a state program administered in conjunction with the federal Medicaid program.[1]  <u>See</u> R.I. Gen.

---

[1] Medicaid is established by Title XIX of the Social Security Act, 42 U.S.C. §§ 1396-1396v.

-2-

Laws §§ 40-8-1 *et seq.*   Its purpose is to provide assistance for medical care and treatment to those in need.   The state program is funded through federal Medicaid and, according to federal law, must conform with the pertinent federal law and regulations.   42 U.S.C. § 1396a; R.I. Gen. Laws 40-8-13.   Specifically, eligibility for state Medical Assistance must be assessed according to the federal definition for disability.   42 U.S.C. § 1396a(v); 42 U.S.C. § 1382c(a)(3)(A).   The required five-part analysis is set forth at 20 C.F.R. § 416.920.   Medical evidence must also be reviewed and evaluated in a manner consistent with federal regulations.   20 C.F.R. §§ 416.901-416.988.

Plaintiff's application for Medical Assistance was denied in August 2010, when Defendants' hearing officer determined that Plaintiff was not disabled.   Plaintiff appealed the ruling to the Rhode Island Superior Court, which identified shortcomings in the hearing officer's decision, and vacated and remanded the matter

to Defendants' agency.  Following additional proceedings

consistent with the directives of the Superior Court, Plaintiff

was again determined to be not disabled, in November 2012.

Plaintiff then filed his federal complaint.

### *The complaint*

In his complaint, Plaintiff claims that Defendants have a

long-standing policy or practice of misapplying one of the

federal regulations involved in the evaluation of disability;

that is, the section entitled "Need to follow prescribed

treatment." 20 C.F.R. § 416.930.  The adverse application of this

section, Plaintiff asserts, resulted in the wrongful denial of

his claim for benefits.

In his first claim for relief, Plaintiff states that

Defendants have violated federal law and thereby denied him the

rights, privileges and immunities provided by the laws of the

United States.  In his second claim for relief, Plaintiff asserts

-4-

that Defendants' hearing procedures and disability determination

violate the Due Process Clause of the U.S. Constitution, as well

as federal law, 42 U.S.C. § 1396a(a)(3).  Plaintiff seeks a

declaratory judgment that Defendants' practice violates 42 U.S.C.

§§ 1382c(a) and 1396a; he also seeks a permanent injunction

ordering Defendants to comply with regulations going forward.

### *The Need to follow prescribed treatment*

The section in question provides:

> (a) What treatment you must follow.  In order
> to get benefits, you must follow treatment
> prescribed by your physician if this
> treatment can restore your ability to work,
> or, if you are a child, if the treatment can
> reduce your functional limitations so that
> they are no longer marked and severe.
>
> (b) When you do not follow prescribed
> treatment.  If you do not follow the
> prescribed treatment without good reason, we
> will not find you disabled or blind or, if
> you are already receiving benefits, we will
> stop paying you benefits.

20 C.F.R. § 416.930.  The section continues with a subsection (c)

which provides examples of acceptable reasons for failing to

follow prescribed treatment (such as a religious objection or

that the treatment is extremely risky).

According to Plaintiff's complaint, Defendants misapply and overuse this section in order to justify the denial of benefits to otherwise eligible Rhode Islanders.  Plaintiff claims:

> Instead of applying § 416.930 to the relatively rare situation where the medical evidence contains evidence of refusal or failure, without good cause, to comply with prescribed treatment expected to restore work, Defendants apply the regulation as imposing upon each applicant the burden of proving that s/he has strictly complied with all treatment.  As a result, application of this regulation is the rule, not the exception, in Medicaid disability hearing decisions.

Complaint ¶ 22.

### *The hearing officer's decision*

In a 23-page decision, Defendants' hearing officer reviews and summarizes Plaintiff's medical records.  In the section entitled "Discussion of the Medical Evidence Record," the hearing officer devotes a paragraph to the disputed regulation.

> In order to get benefits, an individual must follow treatment prescribed by his physician if this treatment can restore his ability to work.  If the individual does not

-6-

follow the prescribed treatment without good
reason, he will not be found disabled.  The
individual's physical, mental, educational,
and linguistic limitations will be considered
to determine if he has an acceptable reason
for failure to follow prescribed treatment in
accordance with 20 CFR 416.930.  Although the
presence of an acceptable reason must be
evaluated based on the specific facts
developed in each case, examples of
acceptable reasons for failing to follow
prescribed treatment can be found in 20 CFR
416.930(c).  In this matter, the appellant's
PCP [primary care physician] had consistently
documented non compliance relative to routine
laboratory testing, dietary requirements,
smoking cessation, and evaluation of
specialists.  As a result, the physician's
records often provided more information about
what was unproven rather than facts that
would lead to accurate determinations
regarding diagnoses and the best treatment
options.  The appellant did not make any
excuses or claim good cause for his missed
appointments and tests.  Not taking
prescribed medication and/or infrequently
seeking prescribed medical evaluation
undermines complaints of disabling symptoms.

Reconsidered Decision, November 26, 2012, at 13-14.

In the Conclusion section, the hearing officer summarized

the evaluation process and the findings.  In connection with

Plaintiff's various ailments, the hearing officer made the

following observations:

Diabetes – although Plaintiff's diabetes is poorly controlled

through diet, there are no secondary symptoms or resulting

-7-

complications.

Hypertension – well controlled through medication.

Coronary artery disease – Plaintiff had successful stent surgery with no recurring problems.  While his condition is stable and asymptomatic, his physician has recommended reasonable caution with physical exertion.

Osteoarthritis in knees – Plaintiff's knees are painful, and untreated.[2]  However, there is no evidence of loss of strength or nerve or muscle damage.  He is able to get around without assistance and perform daily activities independently.

Plaintiff's doctor recommended a limit of two hours of walking and standing during a work-day.

Depression – Plaintiff has no history of mental health impairments and no history of psychiatric treatment.  His mental state is described as a "depressed mood."

---

[2] Plaintiff stated that he cannot take painkillers because of his previous opiate addiction; he has been told that he is too young for knee replacement surgery and that cortisone injections are counter-indicated because of his history of heart problems.

Substance abuse – Plaintiff had become addicted to painkillers prescribed for his knee pain but has achieved sobriety through a medical program.

Thyroid – Plaintiff has an enlarged thyroid with a nodule but there are no symptoms or problems associated with this condition.

Plaintiff has a bullet lodged behind ear; however, there is no evidence that this effects his hearing or other functioning.

Taking into account Plaintiff's physical and mental limitations, the hearing officer concluded that, while Plaintiff could not go back to work as a furniture mover, he was not disabled and he could successfully perform a sedentary job.

> In summary, the appellant was age 45 at the time of application. He had completed a high school education, and had a positive past relevant work history as a furniture mover. Evidence established the existence of medically determinable impairments including diabetes which, although not optimally controlled, had not been proven to have resulted in specified residual effects at the time of hearing. Hypertension had been successfully medication managed, and related coronary artery disease had been asymptomatic for more than 2 years after stent placement. Thyroid enlargement and nodule formation was not associated with any proven dysfunction. Knee pain did reduce activity, as the

condition was untreated, and the potential
for improvement of adverse symptoms had not
been well defined or implemented.  Evidence
did not rule out his ability to perform
sedentary level activity which would allow
him to use upper extremities unaffected by
his conditions while working in a seated
position throughout most of a workday, as the
appellant and his legal representative
believed that he could do.  Situational
depression had not been treated consistently,
and resulted in reduced motivation and
interest.  Even when considering the
reduction of activity secondary to depressive
symptoms, there was no evidence that would
rule out that his mental capability was
sufficient to perform at least simple tasks,
or to preclude the possibility that he could
learn new skills.  Substance dependence
remained in remission, and did not directly
impact functioning at the time of the
decision.

Reconsidered Decision at 22.

## **Standard of review**

Defendants have moved for judgment on the pleadings,

pursuant to Fed. R. Civ. P. 12(c).  As with other motions brought

under Rule 12, the Court is required to review the pleadings and

the facts therein in the light most favorable to the party

opposing the motion – in this case, Plaintiff.  Perez-Acevedo v.

Rivero-Cubano, 520 F.3d 26, 29 (1st Cir. 2008).

In addition, the Court "may supplement the facts contained in the pleadings by considering documents fairly incorporated therein and facts susceptible to judicial notice." Curran v. Cousins, 509 F.3d 36, 44 (1st Cir. 2007).  In this case, the Court has reviewed and relied upon the Reconsidered Decision of the Department of Human Services hearing officer, dated November 26, 2012.

## Analysis

### *Burford* abstention

Defendants urge the Court to refrain from proceeding with this case because the State's Medical Assistance program is a complex regulatory system that would be better reviewed by the Rhode Island Superior Court, according to established state administrative procedures.  Plaintiff argues that federal court is the proper venue because he is challenging the State's interpretation of federal law.

The Supreme Court directs the federal courts to exercise the jurisdiction conferred upon them.  New Orleans Public Serv., Inc. ("NOPSI") v. Council of City of New Orleans, 491 U.S. 350, 358 (1989).  Quoting NOPSI, the First Circuit wrote, "This all but unyielding duty to exercise jurisdiction rests on 'the undisputed constitutional principle that Congress, and not the Judiciary, defines the scope of federal jurisdiction within the constitutionally permissible bounds.'"  Chico Service Station, Inc. v. Sol Puerto Rico, Ltd., 633 F.3d 20, 29 (1st Cir. 2011).

There are, however, exceptional circumstances where the courts may refuse to exercise jurisdiction.  One set of circumstances occurs when the matter before the court falls within the reach of the Burford abstention doctrine.  In Burford, Sun Oil Company attacked the validity of the Texas Railroad Commission's grant of an oil drilling permit, pursuant to the state's oil and gas conservation regulations.  The Supreme Court held that the federal court should not perform a judicial review

-12-

of the administration of a complex state regulatory scheme that would duplicate the review undertaken in the Texas state court. 319 U.S. at 333-34.

The doctrine of Burford abstention was refined by the Supreme Court in the NOPSI case, where the Court held that the district court had erred in abstaining, because the litigation "does not involve a state-law claim, nor even an assertion that the federal claims are in any way entangled in a skein of state-law that must be untangled before the federal case can proceed." NOPSI, 491 U.S. at 361.  As Judge Selya explained in Fragoso v. Lopez, 991 F.2d 878, 882 (1st Cir. 1993), "Post-NOPSI Burford applies only in narrowly circumscribed situations where deference to a state's administrative processes for the determination of complex, policy-laden, state-law issues would serve a significant local interest and would render federal-court review inappropriate."  Since Fragoso, the First Circuit continues to urge limited application of Burford abstention.  See Vaqueria

-13-

Tres Monjitas, Inc. v. Irizarry, 587 F.3d 464, 473 (1st Cir.

2009)("We believe that an expansive reading of NOPSI – one that

would require federal courts to abstain from hearing any case

involving important state regulatory policies – is not consistent

with Supreme Court precedent or with our own.").

In accordance with the NOPSI analysis, the First Circuit

considers three factors in determining whether or not abstention

is proper:

> (1) the availability of timely and adequate state-court
> review, (2) the potential that federal court
> jurisdiction over the suit will interfere with state
> administrative policy-making, and (3) whether conflict
> with state proceedings can be avoided by careful
> management of the federal case.

Chico Service Station, 633 F.3d at 32.

In the present case, Plaintiff asks the Court to review the

application of a federal regulation, 20 C.F.R. § 416.930. The

regulation is interpreted by state employees, administering a

state program; however, it is a state program designed and funded

by the federal government.  Moreover, the state program is

-14-

required by law to be administered in compliance with the federal

statute and regulations.   42 U.S.C. § 1396a(v).[3]  Plaintiff does

not seek appellate review of his disability determination from

this Court.   Instead, he seeks federal court review of the

interpretation of a federal law.   These circumstances are

significantly different from the facts of Burford, where the

federal court was being asked to review the allocation of a state

drilling permit made in accordance with a complex state

regulatory scheme.   And, while it would be possible for Plaintiff

to pursue his claim in state court, the Court does not believe

that its exercise of jurisdiction over this matter would

"interfere with state administrative policy-making," or conflict

with, or duplicate, ongoing state proceedings.   Chico, 633 F.3d

at 32.   Consequently, the Court holds that Burford abstention is

not proper in the present case.

_____

   [3] 42 U.S.C. § 1396a(v) provides in pertinent part that
disability determinations made by a State plan "must apply the
definitions of disability and blindness found in section 1382c(a)
of this title."

This Court's decision is supported by a review of cases in our circuit which have addressed Medicaid and the state programs that administer it.  In Rosie D. v. Swift, 310 F.3d 230 (1st Cir. 2002), a group of Medicaid-eligible children were authorized to go forward with their federal suit against the State of Massachusetts over their demand that the State provide them with certain mental health services they insisted were required under federal Medicaid law.  See also Rosie D. et al. v. Romney, 410 F. Supp. 2d 18, 52 (D. Mass. 2006) ("Plaintiffs have properly invoked 42 U.S.C. § 1983 to enforce rights conferred on them by the Medicaid Act.").  Similarly, in King by King v. Sullivan, 776 F.Supp. 645 (D.R.I. 1991), this writer reviewed a motion for summary judgment brought by Medicaid recipients challenging Rhode Island's failure to provide adequate facilities for the mentally retarded.  That case required this Court's in depth review of the services provided by the State – unlike the case before the Court herein, which only requires the interpretation of a federal

-16-

regulation.  See also  American Soc. of Consultant Pharmacists v.

Concannon, 214 F. Supp. 2d 23 (D. Me. 2002).  Notably, these

cases do not address Burford abstention or any other abstention

doctrine.

     The Court concludes this section with another eloquent

formulation from Judge Selya:

> NOPSI makes clear that Burford abstention
> requires more than a desire to avoid every
> inconvenience to, or disruption of, a state's
> regulatory systems.  Otherwise, abstention
> would be proper in any instance where a
> matter was within an administrative body's
> jurisdiction.  That cannot be the rule.  It
> follows, then, that the mere existence of
> state procedures, or even the existence of a
> complex state apparatus designed to handle a
> specific class of problems, does not
> necessarily justify abstention.

Fragoso, 991 F.2d at 885.

### *Standing*

     While the complexity of Rhode Island's Medical Assistance

program does not impose a limit to the Court's jurisdiction, the

doctrine of standing creates an insurmountable obstacle.  This

Court may not offer an advisory opinion.  Osediacz v. City of

Cranston, 414 F.3d 136, 139 (1st Cir. 2005).  It is not enough

for Plaintiff to assert that Defendants are misinterpreting 20

C.F.R. § 416.930, Plaintiff must also be able to demonstrate that

their misinterpretation has caused him an injury.  Lujan v.

Defenders of Wildlife, 504 U.S. 555, 563 (1992).  Based upon a

reading of the hearing officer's Reconsidered Decision, Plaintiff

cannot fulfill the requirement of an "injury-in-fact."

The three-part test for standing requires a showing that

plaintiff has suffered an injury in fact, caused by the

complained-of conduct, and that the relief sought will redress

the injury.  Osediacz, 515 F.3d at 139.  In the present case,

Plaintiff has suffered an injury: the denial of his claim for

Medical Assistance benefits.  However, this denial did not result

from the application, or misapplication, of 20 C.F.R. § 416.930.

It resulted from the hearing officer's conclusion that Plaintiff

is not disabled.  And were the Court to find that Defendants have

misapplied the regulation, Plaintiff would receive no redress

-18-

because he would still be "not disabled."

In the Reconsidered Decision, the hearing officer found that, while Plaintiff was indeed suffering from various ailments, none of those ailments was serious enough to prevent him from working in a sedentary job.  The hearing officer concluded that Plaintiff had no complications or symptoms resulting from his diabetes, no problems resulting from hypertension, no complications from his history of heart disease and surgery, no symptoms resulting from his thyroid nodule, and no evidence of any psychiatric impairments.  The hearing officer recognized that Plaintiff had pain resulting from osteoarthritis in both knees; nonetheless, the hearing officer found that he was able to get around and perform daily activities independently.  Plaintiff's physician recommended that he limit standing and walking to two hours in a given workday.  Given these findings, the hearing officer determined that Plaintiff was not disabled.

The hearing officer did address the regulation in question,

and the paragraph devoted to Plaintiff's neglect of his own

health may have given rise to some confusion.  However, the

scenario addressed by 20 C.F.R. § 416.930 does not pertain to

Plaintiff.  This is crucial: The hearing officer never states

that Plaintiff is disabled, but would be able to cure or overcome

that disability through treatment that has been prescribed but

not followed, as the regulation sets forth.  Instead, the hearing

officer expresses something more like frustration with

Plaintiff's failure to take care of himself, through proper diet

and quitting smoking, etc., and expresses that reaction under the

general topic heading of the federal regulation.  In the words of

the hearing officer, Plaintiff's failure to follow some

prescribed treatment "undermines complaints of disabling

symptoms."  Reconsidered Decision at 14.  This is hard to

dispute.  Most in our community would agree that a person should

try to help himself before seeking help from others.

      The hearing officer also notes that Plaintiff's failure to

follow through with doctor's visits and evaluations by specialists recommended by his primary care physician had the secondary result of producing a slim medical record.  The hearing officer stated that "the physician's records often provided more information about what was unproven rather than facts that would lead to accurate determinations regarding diagnoses and the best treatment options."  Reconsidered Decision at 14.

At no point does the hearing officer <u>apply</u> the disputed regulation to the evaluation of Plaintiff's condition. Consequently, the Court holds that Plaintiff has not suffered an injury in fact caused by Defendants' alleged misapplication of the federal regulation in question.

## **Conclusion**

For these reasons, the Court grants Defendants' motion to dismiss Plaintiff's complaint based upon the pleadings.  It is so ordered.

<u>/s/Ronald R. Laqueux</u>
Senior United States District Judge


February 19, 2014